IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

**DEBBI GILLESPIE,**

        Plaintiff,

    v.

**MICHAEL J. ASTRUE**, Commissioner,
Social Security Administration

        Defendants.

Civ. No. 6:12-cv-0048-CL

**REPORT & RECOMMENDATION**

CLARKE, Magistrate Judge.

    Plaintiff Debbi Gillespie ("Gillespie") seeks judicial review of the Social Security Commissioner's final decision denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. This court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Commissioner's decision should be REVERSED and REMANDED for a new hearing as detailed below.

///

///

Page 1 – REPORT AND RECOMMENDATION

## BACKGROUND

Born in 1955, Gillespie graduated from high school and has some training as a computer accountant. Tr. 56, 59.[1] She has worked as a snack bar attendant, an inventory clerk, and a manager at a storage facility. Tr. 237. Gillespie alleges disability since March 1, 2006. Tr. 145.

Gillespie's claim was denied initially and on reconsideration, and on April 8, 2011 a hearing was held before an administrative law judge ("ALJ"). Tr. 107-128. Gillespie was not represented at the hearing. Tr. 51. On June 23, 2011 the ALJ issued a ruling denying her claim for benefits. Tr. 23-47. The Appeals Counsel denied her request for review of the decision, and then twice set aside its decision in order to consider additional information. Tr. 1-16. Ultimately it denied review, and the ALJ's decision became the final decision. Tr. 1-6.

## DISABILITY ANALYSIS

The Commissioner engages in a sequential process encompassing between one and five steps to determine disability under the meaning of the Act. 20 C.F.R. §§ 404.1520; 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

At step one, the ALJ determines if the claimant is performing substantial gainful activity. If he is, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). At step two, the ALJ determines if the claimant has "a severe medically determinable physical or mental impairment" that meets the twelve-month durational requirement. 20 C.F.R. §§ 404.1509; 404.1520(a)(4)(ii); 416.909, 416.920(a)(4)(ii). If the claimant does not have such a severe impairment, he is not disabled. Id.

---

[1] Citations "Tr." refer to indicated pages in the official transcript of the administrative record filed by the Commissioner on June 28, 2012 (Docket # 11).

At step three, the ALJ determines whether the severe impairment meets or equals a "listed" impairment in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment is determined to equal a listed impairment, the claimant is disabled.

If adjudication continues beyond step three the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a regular and continuing basis, despite limitations imposed by his impairments. 20 C.F.R. §§ 404.1520(e); 416.920(e); Social Security Ruling ("SSR") 96-8p.

The ALJ uses this information to determine if the claimant can perform his past relevant work at step four. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant can perform his past relevant work, he is not disabled. If the ALJ finds that the claimant's RFC precludes performance of his past relevant work the ALJ proceeds to step five.

At step five the Commissioner must determine if the claimant is capable of performing work existing in the national economy. 20 C.F.R. §§ 404.1520(a)(4)(v); 404.1520(f); 416.920(a)(4)(v); 416.920(f); Yuckert, 482 U.S. at 142; Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). If the claimant cannot perform such work, he is disabled. Id.

The initial burden of establishing disability rests upon the claimant. Tackett, 180 F.3d at 1098. If the process reaches the fifth step, the burden shifts to the Commissioner to show that "the claimant can perform some other work that exists in the national economy, taking into consideration the claimant's residual functional capacity, age, education, and work experience." Id. at 1100. If the Commissioner meets this burden, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g): 404.1566; 416.920(g); 416.966.

## THE ALJ'S FINDINGS

At step one, the ALJ found that Gillespie did not engage in substantial gainful activity after the alleged onset date. Tr. 30. At step two, the ALJ found Gillespie had the following "severe" impairments: fibromyalgia syndrome, bilateral bursitis or tendonitis of the shoulders, urinary incontinence, diabetes mellitus type II, degenerative disc disease of the lumbar spine, and osteoarthritis of the left hip. Tr. 30. The ALJ found that her RFC allowed her to "lift up to 20 pounds occasionally; lift or carry up to 10 pounds frequently; stand or walk for about six hours and sit for about six hours in an eight hour workday with normal breaks, but [she] would need the option of alternating between sitting and standing positions as needed during the work day while remaining on task; she could occasionally climb ramps or stairs, kneel, crouch, or crawl; frequently balance, and stoop; never climb ladders, ropes, or scaffolds; her bilateral overhead reaching is limited to occasionally; a restroom must be available on the premises." Tr. 31.

At step four, the ALJ found that Gillespie is able to perform her past relevant work, including work as an inventory controller and as a storage facility assistant manager. Tr. 41. The ALJ nevertheless proceeded to step five and found that even if Gillespie were deemed unable to perform her past relevant work, she is capable of performing other work existing in significant numbers in the national economy, including basic accounting, records management, cashiering, retail display, customer service, data entry, and retail inventory control, with little if any vocational adjustment needed. Tr. 42. The ALJ therefore found Gillespie not disabled.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if the Commissioner applied proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1193 (9th

Cir. 2004). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id.

This court must weigh the evidence that supports and detracts from the ALJ's conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998)). The reviewing court may not substitute its judgment for that of the Commissioner. Id. (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)); see also Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. Id.; see also Batson, 359 F.3d at 1193.

## ANALYSIS

Gillespie challenges the ALJ's decision, claiming that he erred by (1) failing to credit the opinion of Dr. Nolan, the examining physician, (2) failing to give clear and convincing reasons for rejecting Gillespie's testimony, and (3) failing to develop the evidence on behalf of the unrepresented claimant. As a result of these errors, Gillespie asserts that the ALJ's decision finding her capable of performing her past relevant work and capable of performing any other work existing in the national economy should be reversed. She asserts that the AJL should have found her disabled at step five.

**Examining Physician's Opinion**

Disability opinions are reserved for the Commissioner. 20 C.F.R. §§ 404.1527(e)(1); 416.927(e)(1). However, when making that determination, the ALJ generally must accord greater weight to the opinion of an examining physician than to a reviewing physician. Id.

"[T]he opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995) (citations and internal quotation marks omitted). The Ninth Circuit has held that "the report of [a] non-treating, non-examining physician, combined with the ALJ's own observance of [the] claimant's demeanor at the hearing" did not constitute "substantial evidence." Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984). Additionally, even opinions by multiple non-examining physicians, "with nothing more" do not constitute substantial evidence. Pitzer v. Sullivan, 908 F.2d 502, 506 n.4 (9th Cir. 1990).

In this case, the ALJ rejected the opinion of an examining doctor based only on the opinions of non-examining doctors. Dr. Nolan, the examining doctor, stated in his report, "Lifting and carrying should be limited to 10 pounds . . . . She should be able to sit for at least six hours [in] an eight hour day with opportunity for position change as needed for comfort. She should be able to stand and/or walk up to two hours in an eight hour day." Tr. 272. First, the ALJ determined that Gillespie's condition had "remained sufficiently static that Dr. Nolan's findings remain applicable." Tr. 32. However, the ALJ then determined that Gillespie had the residual functional capacity "to lift up to 20 pounds occasionally, lift or carry up to 10 pounds frequently; stand or walk for about six hours and sit for about six hours in an eight hour workday with normal breaks, but would need the option of alternating between sitting and standing positions as needed during the work day while remaining on task." Tr. 32. The ALJ explained the discrepancy in standing and walking limitations by citing to a report by Dr. Alley, a non-examining physician for the state agency: "Dr. Alley noted that Dr. Nolan's finding of limited standing or walking was inconsistent with her demonstrated normal gait during the examination,

and her ability to sit or stand without difficulty." Tr. 32. The ALJ also noted that another reviewing physician, Dr. Berner, agreed with Dr. Alley's assessment. Tr. 32.

Thus, the ALJ rejected Dr. Nolan's opinion based on the opinions of Dr. Alley and Dr. Berner, and nothing more. As discussed, opinions of non-examining physicians are generally not considered "substantial evidence" sufficient to reject the opinion of an examining physician. Pitzer, 908 F.2d at 506 n. 4. Additionally, in this case, the reason given by the non-examining physician for rejecting the opinion of the examining physician is completely inadequate. Dr. Alley based his rejection of Dr. Nolan's finding on Dr. Nolan's own observation of Gillespie's gait and ability to sit and stand. Dr. Alley was not in the exam room, and his interpretation of what Dr. Nolan saw is not legitimate.

Finally, the ALJ did not explain why he found that Gillespie was capable of lifting "up to 20 pounds occasionally" when Dr. Nolan found that lifting and carrying should be limited to 10 pounds. This opinion is uncontradicted in the record, and the ALJ gave no reason for rejecting it.

Because the ALJ failed to give specific and legitimate reasons, supported by substantial evidence, for rejecting Dr. Nolan's opinion, Dr. Nolan's opinion should be credited as a matter of law. Lester, 81 F.3d at 834; Hammock v. Bowen, 879 F.2d 498, 502 (9th Cir. 1989).

**Claimant's Credibility**

Once a claimant shows an underlying impairment that may "reasonably be expected to produce pain or other symptoms alleged," absent a finding of malingering, the ALJ must provide "clear and convincing" reasons for finding a claimant not credible. Lingenfelter, 504 F.3d at 1036 (citing Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996)). The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." Orteza v. Shalala, 50 F.3d 748, 750 (9th Cir.

1995) (citing Bunnell v. Sullivan, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc)). The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. Smolen, 80 F.3d at 1284; see also SSR 96-7p at *3 (available at 1996 WL 374186). The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant. Smolen, 80 F.3d at 1284. Once a claimant establishes an impairment, the ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." Robbins, 466 F.3d at 883.

Additionally, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.1989)). In Vertigan, the claimant testified that she was able "to go grocery shopping with assistance, walk approximately an hour in the malls, get together with her friends, play cards, swim, watch television, and read. She also took physical therapy for six months and exercised at home." Id. The ALJ concluded that these activities were inconsistent with her claims of pain and ultimate disability. Id. However, the court disagreed and determined that such activities do not detract from a claimant's credibility because "[o]ne does not need to be 'utterly incapacitated' in order to be disabled." Id.

In this case, the ALJ found that Gillespie has the following severe impairments: fibromyalgia syndrome, bilateral bursitis or tendonitis of the shoulders, urinary incontinence,

diabetes mellitus type II, degenerative disc disease of the lumbar spine, and osteoarthritis of the left hip. Tr. 30. The ALJ's report states that despite these impairments,

> the claimant admits to an extensive range of activities, including ones with significant exertional demands. She tells Dr. Somera that she uses a treadmill once or twice a day, and walks up to two miles a time. She has been attending weight-loss workouts. She has spent many months paying for her housing by cleaning and caring for her sister's children. Her sister states that she has been camping, as well as performing childcare. She has performed activities inconsistent with significant pain, fatigue, depression such as going 'clubbing' once a month, according to her sister. She has spent much of the period since she last worked making craftwork including jewelry for sale, and admitted that she engaged in crafts as recently as the Christmas season in 2010.

Tr. 40. These reasons given by the ALJ are insufficient to reject Gillespie's testimony as credible. First, her activities of daily living and exercise are not inconsistent with her claims of pain and inability to work. The exercise was prescribed by her doctor to manage her fibromyalgia and back pain, and according to at least one report she was a "motivated" participant in physical therapy and rehabilitation. Tr. 299. The fact that a claimant can perform physical activities in spite of her pain and disabilities does not detract from her credibility. Vertigan, 260 F.3d at 1050.

The ALJ also cited the inconsistency with which Gillespie reported to doctors regarding her urinary incontinence. Tr. 40. However, while Gillespie reported varying degrees of urinary frequency and incontinence to different medical personnel, this is not inconsistent with the fact that she very well could have varying degrees of urinary frequency and incontinence. In addition, the differences in the frequency she reported were quite small. Such a fluctuating condition does not detract from her credibility, and is consistent with the record as a whole.

Next, the ALJ's report stated that there was evidence suggesting that "the claimant, herself, does not subjectively believe she is disabled for Social Security purposes." The ALJ

noted that she "admits that she has looked for work," and he suggested that she is capable of performing her previous job because, when she quit, "it was not because she was unable to do that or other work, but because she could not obtain cooperation from management in making accommodations that would allow her to continue working." Tr. 40. These statements are taken out of context and do not logically support the ALJ's conclusion. First, Gillespie did admit that she thought she would not qualify for Social Security Disability, but she testified that this belief was due to the fact that her medical records had been lost: "I had absolutely nothing to show anybody because they lost my records in Medford." Tr. 64. Second, the fact that Gillespie quit her storage management job because her employer would not accommodate her physical limitations is consistent with her claim for disability based on those physical limitations. Likewise, accepting unemployment payments and looking for a similar job with the hope that a new employer might make such accommodations is not inconsistent with being unable to perform regular and sustained full time work, eight hours per day, five days a week. See Social Security Ruling 96-8p; Carmickle v. Commissioner, 533 F.3d 1155, 1161-62 (9th Cir. 2008) (holding that when the record does not establish that the claimant held himself out for full-time work, receipt of unemployment benefits is not a basis for discrediting his disability claim).

Finally, the ALJ gave less weight to Gillespie's testimony because she appeared at her hearing using a cane even though "no cane has been prescribed, and her examiners do not consistently mention even self-reported use." Tr. 40. Gillespie did not claim that the cane was prescribed, but testified that she uses it to help her stand up after sitting. Tr. 74. The ALJ gave no reason for disbelieving Gillespie, other than a lack of evidence that she uses it consistently. Since she did not claim to use it consistently, however, her use of it at the hearing does not detract from her credibility.

Because the reasons discussed above are not "clear and convincing," the ALJ's determination of the claimant's credibility is inadequate, and the case should be remanded with instructions to properly credit Gillespie's testimony unless there are clear and convincing reasons not to do so.

**ALJ's Duty to Develop the Record**

The ALJ in a social security case has an independent "'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Smolen, 80 F.3d at 1288 (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir.1983)). This duty extends to the represented as well as to the unrepresented claimant. Id. When the claimant is unrepresented, however, the ALJ must be especially diligent in exploring all the relevant facts. Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978). Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." Smolen, 80 F.3d at 1288; Armstrong v. Comm'r of Soc. Sec. Admin., 160 F.3d 587, 590 (9th Cir.1998). The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir.1998); Smolen, 80 F.3d at 1288.

The only examining physician to render an opinion on Gillespie's functional limitations was Dr. Nolan. The ALJ discredited this opinion based on insufficient evidence, as discussed above, leaving very little on which to base his assessment of her RFC. In addition, the ALJ noted certain issues for which the record was sparse or ambiguous, including the issues of Gillespie's urinary disorder, for which he found the evidence was inconsistent, Tr. 40, and her

lumbar arthritic abnormalities and possible nerve impingement, for which the ALJ found the record was "not clear cut." Tr. 37. In such areas, the ALJ had a duty to develop the record and make additional inquiries. On remand, after properly crediting Dr. Nolan's opinion and the claimant's own testimony, if the record is still inadequate or ambiguous, the ALJ should be instructed to fully and fairly develop it where necessary.

**Steps Four and Five Inadequate**

At steps four and five, the ALJ found that Gillespie is able to perform her past relevant work, and that even if she were deemed unable to perform her past relevant work, she is capable of performing other work existing in the national economy. In making these determinations, the ALJ may elicit testimony from a vocational expert, but the hypothetical posed to the VE must consider all of the claimant's limitations supported by the record. Robbins v. Soc. Sec. Admin., 466, F.3d 880, 886 (9th Cir. 2006).

In this case, as discussed above, the ALJ did not consider all of Gillespie's functional limitations as supported by the record, and thus the case should be reversed and remanded so that the proper hypotheticals may be posed to the vocational expert. Specifically, the ALJ should be required to consider Gillespie's limitations in lifting and carrying, and standing and walking, as determined by her examining physician. In addition, the ALJ did not properly address Gillespie's urinary disorder. While having a restroom available on the premises would address her urinary frequency (see Tr. 39), it would not address her incontinence. Because there is substantial and unchallenged evidence in the record of this particular condition, the vocational expert should be questioned about whether a claimant with similar incontinence issues could maintain employment.

## RECOMMENDATION

The ALJ erred by failing to provide adequate reasons for rejecting the examining physician's opinion and the claimant's testimony in determining the RFC, failing to properly develop the record, and by failing to present the proper hypotheticals to the vocational expert. Thus, the ALJ's decision should be REVERSED and REMANDED for further proceedings. On remand, the ALJ should be directed to reassess Gillespie's RFC, including all of her relevant limitations. The ALJ should be further directed to reassess the step-four conclusion in light of Gillespie's complete RFC and this opinion, and, if necessary, proceed to step five.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Federal Rule of Appellate Procedure Rule 4(a)(1) should not be filed until entry of the district court's judgment or appealable order.

The Report and Recommendation will be referred to a district judge. **Objections to this Report and Recommendation, if any, are due no later than fourteen (14) days from today's date. If objections are filed, any response is due fourteen (14) days from the date of the objections.** See Fed. R. Civ. P. 72, 6. Parties are advised that the failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED this _____ day of February, 2013.

_____
MARK D. CLARKE
United States Magistrate Judge